**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Kechia Karen Gillen

    v.                                    Case No. 16-cv-59-JL
                                              Opinion No. 2017 DNH 037
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Kechia Gillen moves to
reverse the Acting Commissioner's decision to deny her
applications for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, the decision of the Acting Commissioner, as announced by
the Administrative Law Judge ("ALJ") is affirmed.

**I. Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . . benefits

unless 'the [Acting Commissioner] has committed a legal or

factual error in evaluating a particular claim.'" Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)

(quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S.

389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

Gillen applied for DIB and SSI in August of 2011, claiming that since March 31, 2010, she had been disabled by borderline personality disorder, posttraumatic stress disorder ("PTSD"), depression, anxiety, and attention deficit hyperactivity

disorder.  The date on which she was last insured for DIB, known in Social Security parlance as her "DLI," was September 30, 2011.

In the Disability Report that Gillen filed in connection with her applications, she indicated that she was laid off from her job as a food-service worker for a culinary company on March 31, 2010, and that her "mental health condition prevented [her] from being able to obtain other work."  Administrative Transcript (hereinafter "Tr.") 347.  She did not mention any physical impairments in her applications.

In December of 2011, Gillen was referred to a psychologist, Dr. Mary Anne Roy, for a consultative examination.[1]  Dr. Roy examined Gillen and wrote a report on the examination she performed.  That report, however, includes no formal assessment of Gillen's mental residual functional capacity ("RFC").[2]  Rather, under the heading "Medical Source Statement," Dr. Roy described the symptoms of Gillen's depression, PTSD, and possible agoraphobia and concluded:  "These aspects of her personality

---

[1] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request."  20 C.F.R. §§ 404.1519 & 416.919.

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

would make it significantly challenging for her to engage in employment at this time." Tr. 635.

The record includes a Psychiatric Review Technique ("PRT") assessment[3] and an assessment of Gillen's mental RFC that were generated during the initial evaluation of her claims. Both assessments were conducted by a state-agency psychological consultant, Dr. Lewis Lester, and both are reported on Disability Determination Explanation ("DDE") form.

In his PRT assessment, Dr. Lester determined that Gillen had: (1) moderate restrictions on her activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation, each of extended duration. See Tr. 170-71, 182-83.

Turning to Dr. Lester's assessment of claimant's RFC, the DDE form explains:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understand and memory, sustained concentration and persistence, social interaction, and

---

[3] The Social Security Administration uses the PRT to evaluate the severity of mental impairments. See 20 C.F.R. §§ 404.1520a & 416.920a (describing the PRT).

adaptation).  Any other assessment information deemed
appropriate can be recorded in the MRFC – Additional
Explanation text box.

Tr. 172, 184.  Dr. Lester made the following assessment of

Gillen's mental RFC:

> She can understand & remember simple tasks &
> procedures.  . . .  Her mood instability, personality
> disorder & anxiety preclude complex or detailed tasks.
>
> . . . .
>
> She can be reliable & sustain 2-hour blocks at simple
> tasks at a consistent pace without interruption from
> psychologically-based symptoms over a normal work
> day/week.  . . .
>
> . . . .
>
> She cannot interact with the public due to her mood
> instability, personality disorder & anxiety, but she
> can interact with co-workers & supervisors in a normal
> work setting.  . . .
>
> . . . .
>
> She can adapt to occasional & routine changes & does so
> in her daily life.  She can avoid common hazards,
> travel & make basic decisions.
>
> . . . .
>
> . . .  In spite of established mental impairments &
> associated mental limitations, claimant retains the
> capacity to carry out simple tasks on a sustained basis
> in a routine work setting that does not involve
> interacting with the public.

Tr. 173-74, 185-86.

In a letter dated January 18, 2012, the Social Security

Administration ("SSA") disapproved Gillen's claim for benefits.

6

She sought reconsideration.  In support of her request for reconsideration, she submitted a form captioned "Disability Report – Appeal" in which she identified, as a change in her physical condition, disc disease in her lower back.  She further indicated that the change in her condition occurred on approximately January 9, 2012.

On reconsideration, a different state-agency psychological consultant, Dr. Leigh Haskell, performed a second PRT assessment. Dr. Haskell's findings mirror those of Dr. Lester.  Dr. Haskell also provided the following assessment of Gillen's mental RFC:

> She can understand and remember simple tasks and procedures.  . . .  Her mood instability, personality disorder and anxiety preclude complex or detailed tasks.
>
> . . . .
>
> She can sustain and persist at simple tasks during a normal work schedule.  . . .
>
> . . . .
>
> She cannot interact with the public, but she can interact with co-workers and supervisors in a normal work setting.  . . .
>
> . . . .
>
> She can adapt to occasional and routine changes, and make basic decisions.

Tr. 199-201, 212-14.

To document her newly identified disc disease, Gillen submitted medical records from January, March, and April of 2012, but she submitted no opinion from a medical source that addressed the limiting effects of her back condition.  Dr. Benjamin Weinberg, a state-agency medical consultant, reviewed claimant's medical records and determined that she suffered from "[n]o physical [medically determinable impairment] for either [the] current or [the] DLI period."  Tr. 196, 209.  Presumably for that reason, the DDE form reports no assessment of Gillen's physical RFC.  In a letter dated May 10, 2012, the SSA upheld its previous decision to deny Gillen's claims for DIB and SSI.

In August of 2013, Gillen was awarded benefits from the State of New Hampshire's Aid to the Permanently and Totally Disabled ("APTD") program.  That award resulted from a determination, by the state's Disability Determination Unit ("DDU"), that she was disabled by "[c]hronic mental health problems since childhood."  Tr. 672.  The evidence supporting claimant's award of APTD benefits includes: (1) a Mental Health Evaluation Report prepared by Dr. Eric Niler after an examination; (2) Psychiatric Review Template[4] completed by a

---

[4] The Psychiatric Review Template is a form used by the New Hampshire DDU to evaluate applications for the state's APTD program.  It "mirrors the Psychiatric Review Technique employed by the SSA, and refers directly to the listings of mental

physician whose signature is indecipherable and whose name is not
reported in the parties' joint statement of facts; and (3) a
mental RFC worksheet completed by Dr. Robert Beaton.

Turning to Dr. Niler's report, he offered the following
opinions on Gillen's then-current level of functioning:

**Activities of Daily Living:**  . . .  She appears capable
of all aspects of daily living, save for those
activities which might be contraindicated by her claim
of lumbar [degenerative disc disease] . . .

**Social Functioning:**  . . .  Acknowledged difficulty
coping with others who are hostile or demeaning . . .
currently has a 12-month restraining order on her
(following a hearing) from a former neighbor, and
acknowledged having been written up [twice] at work
(between 2008-2010) due to verbally exploding on two
different, difficult customers . . .

**Concentration, persistence or pace:**  . . .  Does not
appear to have problems in these areas . . .

**Episodes of decompensation:**  . . .  No evidence of any
decompensation in the recent past, save for the
incident which resulted in the restraining order this
winter, although I do not have the records to review to
make a determination as to whether claimant was
exhibiting any psychiatrically significant behaviors.

Tr. 685.  With regard to Gillen's reaction to stress and her
ability to adapt to work or work-like situations, Dr. Niler
reported:  "Will likely have some difficulties if she has to work

_____

impairments set out in the Social Security regulations." Bodette
v. Colvin, No. 15-cv-282-JL, 2016 WL 4197581, at *4 (D.N.H. Aug.
9, 2016).

with the public or with coworkers/supervisors whom she perceives to be hostile or disrespectful." Id.  The Psychiatric Review Template appears to do nothing more than restate the findings from Dr. Niler's report.

The Mental RFC Worksheet that Dr. Beaton completed follows a format that is similar, but not identical to, the analytical framework that Drs. Lester and Haskell used to assess claimant's mental RFC.  It did not require the kind of narrative responses that Drs. Lester and Haskell provided, but did ask Dr. Beaton to assess Gillen's abilities in 16 different areas.  He opined that she had no limitations in six areas, slight limitations in four areas, and moderate limitations in six areas.  He identified no area in which she had a marked limitation.  After the SSA denied Gillen's applications for DIB and SSI, she received a hearing before an ALJ.  At the hearing, the ALJ heard testimony from a vocational expert ("VE").  The ALJ began by asking the VE to identify jobs that could be performed by

> a hypothetical individual [of] the same age, education
> and vocational background as the claimant [with] no
> exertional limitations, but [whose] work would be
> limited to simple, routine and repetitive tasks with
> only occasional decision-making, occasional workplace
> changes . . . occasional interaction with coworkers,
> and occasional interaction with the general public.

Tr. 124.  The VE testified that such an individual could not perform claimant's previous work, but could perform the jobs of

salvage worker, office cleaner, and price marker.  When the ALJ
asked a second hypothetical question, with the exertional level
reduced to light, the VE eliminated the salvage worker job and
added flower care worker.  Finally, when the ALJ asked a third
hypothetical that added a limitation precluding any interaction
with the general public, the VE testified that all three jobs
would still be available.

    After the hearing, the ALJ issued a decision that includes
the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments:
> Degenerative Disc Disease; Borderline Personality
> Disorder; Posttraumatic Stress Disorder; Depression;
> Anxiety; Polysubstance Abuse Disorder (20 CFR
> 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments in
> 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
> and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except:
> the claimant's work is limited to simple, routine,
> repetitive tasks with only occasional decision-making
> and occasional workplace changes; only occasional
> interaction with co-workers; no interaction with the
> general public.

. . . .

6.  The claimant is unable to perform any past relevant
work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that the claimant can perform (20 CFR 404.1569,
404.1569(a), 416.969, and 416.969(a)).

Tr. 76, 77, 78, 81.  Specifically, the ALJ determined that

claimant could perform the three jobs identified by the VE:

office cleaner, price marker, and flower care worker.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under a

disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for

supplemental security income, a person must be aged, blind, or

disabled, and must meet certain requirements pertaining to income

and assets.  42 U.S.C. § 1382(a).  With respect to Gillen's

application for DIB, the question is whether the ALJ properly

determined that she was not under a disability from March 31,

2010, through September 30, 2011, which is her date last insured.

With respect to her application for SSI, the question is whether

the ALJ properly determined that Gillen was not under a disability from March 31, 2010, through August 1, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

[o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform.  Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

[i]n assessing a disability claim, the [acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Gillen's Claims

Gillen claims that the ALJ erred by:  (1) rendering a decision that is not supported by substantial evidence; (2) determining that her statements about the symptoms of her physical and mental impairments were not credible; (3) giving great weight to some but not all of the opinions of Drs. Roy and Beaton; (4) relying on VE testimony that did not take into account all of her limitations; and (5) failing to consult with a medical advisor to establish the onset date of her disability. None of Gillen's claims has merit.

14

1. <u>Substantial Evidence</u>

Gillen first claims that the ALJ's findings and decision were not supported by the substantial evidence of record.  After making that assertion, claimant devotes nine pages of her motion to a list of facts drawn from the administrative record and then concludes:

> The Commissioner's findings were not supported by the substantial evidence contained in the record and the Decision ignored and/or improperly discounted the substantial evidence of record as set forth herein; this is unreasonable and legally erroneous, and warrants reversal of the Decision.

Cl.'s Mot. to Reverse (doc. no. 6) 12.  That argument fails for several reasons.

First, it is woefully vague.  It is one thing for a claimant to identify a particular finding by an ALJ and then contend that the finding is not supported by substantial evidence.  But that is not what Gillen does here.  Rather, she merely trots out a list of facts drawn from the record and calls it a day.  But it is not the court's job to comb through the ALJ's decision, catalog his specific findings, and then determine whether each of them is supported by substantial evidence.  That said, Claimant's argument is best construed as invitation to the court to reweigh the evidence before the ALJ, but that is an invitation the court

must decline.   See Irlanda Ortiz, 955 F.2d at 769; Tsarelka, 842
F.2d at 535.

As respondent points out in her motion, Magistrate Judge
Neiman has quite aptly set out the appropriate response to a
claim such as the one Gillen makes here:

> Plaintiff, in arguing that the ALJ's RFC
> assessment was not supported by substantial evidence,
> alleges no specific error in the ALJ's decision and
> disputes none of the ALJ's characterizations of the
> evidence.  Instead, in what has become a too common
> practice, Plaintiff's counsel merely summarizes
> evidence in the record that she believes supports her
> client's argument that she is disabled.  It is well
> settled, however, that the existence of such evidence,
> "or, indeed, evidence contrary to the ALJ's findings,
> does not extinguish the substantial evidence supporting
> the ALJ's findings." Fernung v. Astrue, 2011 WL
> 1234784, at *10 (S.D. Ohio Jan. 26, 2011); Her v.
> Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999)
> ("Even if the evidence could also support another
> conclusion, the decision of the Administrative Law
> Judge must stand if the evidence could reasonably
> support the conclusion reached."); see also Rodriguez
> Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1,
> 3 (1st Cir. 1987) (resolving evidentiary conflicts is
> the administrative law judge's prerogative).  In
> essence, Plaintiff has done only half the work
> required.  Plaintiff must show not only the existence
> of evidence in the record supporting her position but
> must also demonstrate that the evidence relied on by
> the ALJ is either insufficient, incorrect, or both.
> Plaintiff has failed to do that here.

Greene v. Astrue, Civ. Action No. 11-30084-KPN, 2012 WL 1248977,
at *3 (D. Mass. Apr. 12, 2012).  In sum, Gillen's first claim of
error is entirely unavailing.

2.  <u>Credibility</u>

Gillen claims that "[t]he [Acting] Commissioner's rationale for finding that [her] statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible was in error and was not supported by the substantial evidence."  Cl.'s Mot. to Reverse (doc. no. 6) 13.  She divides her argument on this issue into two sections, one dealing with the symptoms of her physical impairment, the other dealing with the symptoms of her mental impairments.  Each section consists almost exclusively of a listing of evidence that, in claimant's view, "was improperly ignored and/or discounted by the ALJ."  <u>Id.</u> at 14; <u>see also</u> <u>id.</u> at 17.  However, as the court has already explained, the mere citation of facts supporting a claim for benefits is insufficient to establish that an ALJ's denial of benefits is not supported by substantial evidence.  Accordingly, Gillen's second claim of error fails.  While the court need say no more, it will focus, briefly, on the ALJ's rationale for declining to credit Gillen's statements about the limiting effects of the symptoms of her mental impairments, and the insufficiency of Gillen's challenge to the ALJ's assessment of those statements' credibility.

The ALJ declined to find claimant's statements credible because:  (1) the symptoms she described from the period after

17

March 31, 2010, are virtually identical to symptoms she reported during the last three years of her employment, i.e., from 2007 through 2010; and (2) when asked to describe changes in her symptoms after her alleged onset date, claimant was unable to do so.  Gillen faults the ALJ for ignoring or improperly discounting 10 different facts, seven of which concern the nature of her employment from 2007 through 2010.  In her view, the ALJ's finding that she was able to hold down a job during that time is not supported by substantial evidence.  The court cannot agree.

With regard to claimant's work history, the record before the ALJ included: (1) a field office Disability Report in which she indicated that she had worked in customer service for a culinary company, eight hours a day, five days a week, from 2007 until March 31, 2010, see Tr. 347-48; (2) a Work History Report in which Gillen stated that she had worked in food services at Water Country from 2007 to 2009, see Tr. 367; and (3) Gillen's hearing testimony, in which she stated that she worked for Boston Culinary Company from 2007 until she was fired in 2010, see Tr. 102-05.  Thus, there is substantial evidence to support the ALJ's finding that "claimant was able to maintain [her] work [for a culinary company] for three years, from 2007 through 2010."  Tr. 80.  While claimant points to evidence that she did not work continuously from the beginning of 2007 through the end of 2010,

that does not entitle her to a determination by this court that the ALJ's finding that she was employed from 2007 through 2010 is not supported by substantial evidence.  It is.

Finally, claimant challenges several other findings by the ALJ, such as the validity of a 2007 GAF score[5] and the appropriate inference to draw from the fact that in 2013, she applied for a job with a former employer.  But those factual matters are inconsequential, and even if the court were to determine that the ALJ's findings were not supported by substantial evidence, that would not entitle claimant to a remand.

### 3. Weighing the Medical Opinions

At the end of her discussion of the ALJ's handling of her statements about her symptoms, Gillen makes what appears to be a separate argument concerning the ALJ's treatment of the medical opinions:

> [T]he Commissioner appears to afford significant weight to only some of the findings of Dr. Roy and Dr. Beaton without reasonable rationale.  There is no reason not to afford the entirety of their findings significant

---

[5] "The 'Global Assessment Functioning' [GAF] scale is 'used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning at the time of evaluation.'" Nickerson v. Colvin, No. 15-cv-487-SM, 2017 WL 65559, at *4 (D.N.H. Jan. 6, 2017) (quoting King v. Colvin, 128 F. Supp. 3d 421, 439, n.16 (D. Mass. 2015); citing Gagnon v. Astrue, No. 1:11-CV-10481-PBS, 2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012)).

weight, including their opinions that the Plaintiff is
not capable of working full time employment.

Cl.'s Mot. to Reverse (doc. no. 6) 19.  That argument, which
claimant barely develops, fails for two reasons.

First, a medical-source statement that a claimant is unable
to work is not a medical opinion but, rather, is an opinion on an
issue reserved to the Acting Commissioner.  See 20 C.F.R. §§
404.1527(d) & 416.927(d).  Such an opinion is entitled to no
special significance.  See 20 C.F.R. §§ 404.1527(d)(1) &
416.927(d)(1).  Beyond that, neither Dr. Roy nor Dr. Beaton ever
opined that Gillen was incapable of working full time.  Dr. Roy
did say that certain "aspects of [Gillen's] personality would
make it significantly challenging for her to engage in employment
at this time," Tr. 635, but Dr. Roy did not say that Gillen was
incapable of working.  Similarly, Dr. Beaton wrote that "[g]iven
[Gillen's] past and recent histories and levels of functioning
there are Moderate limitations suggested as indicated."  Tr. 681.
But, like Dr. Roy, Dr. Beaton never opined that Gillen was
incapable of full-time work.

In short, to the extent that Gillen is actually claiming
that the ALJ erred in his consideration of the opinions offered
by Drs. Roy and Beaton, that claim fails.

4.  VE Testimony

Gillen next claims that the ALJ's decision is not supported by substantial evidence because it rests on VE testimony that was elicited in response to a hypothetical question that did not include all of her limitations.  She is mistaken.

Gillen's fourth claim does rest upon a valid principle of law; an ALJ's step 5 determination is not based upon substantial evidence if the hypothetical question the ALJ asks a VE erroneously omits relevant limitations.  See Marshall v. Colvin, No. 14-cv-239-PB, 2015 WL 248615, at *4 (D.N.H. Jan. 20, 2015); see also Arocho, 670 F.2d at 375 ("in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities").  The problem lies in Gillen's application of that principle to the facts of this case.

According to Gillen, the ALJ's decision is not supported by substantial evidence because

> [t]he vocational expert did not consider the following limitations in answering the ALJ's hypothetical: no interaction with co-workers; no or occasional interaction with supervisors; limited ability to sustain concentration and persistence; limited ability to maintain attention and concentration for extended periods; limited ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and limited ability to

> complete a normal workday and workweek without
> interruptions from psychologically based symptoms and
> to perform at a consistent pace without an unreasonable
> number and length of rest periods.

Cl.'s Mot. to Reverse (doc. no. 6) 21-22.  Gillen appears to

contend that the ALJ was obligated to formulate, and then ask the

VE, a question with an RFC that incorporated each of the

individual findings made by the two psychological consultants who

assessed her RFC.  However, as the DDE form plainly states, an

RFC assessment consists of the narrative discussions of four

categories of limitations, not the ratings of the 20 specific

abilities that are listed under those four broad categories.

Thus, the various limitations that Gillen says the VE erred by

failing to consider (or that the ALJ erred by failing to present

to the VE), are intended to inform, but are not properly a part

of, her RFC assessment.[6]  For example, Dr. Lester's finding that

Gillen had a limited "ability to maintain attention and

concentration for extended periods," Tr. 173, 185, which she says

---

[6] And, at least one of the limitations that Gillen faults
the ALJ for not presenting to the VE, a requirement that she have
no interaction with co-workers, does not appear to have been
endorsed by any of the three psychologists who assessed her
mental RFC: (1) Dr. Lester, who opined that "she can interact
with co-workers & supervisors in a normal work setting," Tr. 174,
186); Dr. Haskell, who opined that "she can interact with co-
workers and supervisors in a normal work setting," Tr. 200, 213;
and (3) Dr. Beaton, who opined that she  had moderate but not
marked limitations in interacting and cooperating appropriately
with co-workers, see Tr. 678.

the ALJ should have presented to the VE, was factored into his
determination that "[s]he can be reliable & sustain 2-hour blocks
at simple tasks at a consistent pace without interruption from
psychologically-based symptoms over a normal work day/week," id.,
which, in turn, is substantial evidence for the ALJ's
determination that Gillen had the RFC to perform "simple,
routine, repetitive tasks," Tr. 78, a limitation that was
accurately reflected in his hypothetical to the VE, see Tr. 124.
In sum, ALJ did not err by failing to present a hypothetical
question to the VE that incorporated the specific limitations
that Gillen faults the VE for failing to consider.  To state
things in the affirmative, the hypothetical question the ALJ
posed to the VE both incorporated an RFC that is supported by
substantial evidence, and omitted no relevant limitations.
Accordingly, the ALJ committed no error at step 5 by relying on
the testimony he elicited from the VE.

    5.   Medical Advisor/Onset Date

    Gillen's final argument is that because her alleged onset
date (March 31, 2010) and her date last insured (September 30,
2011) were nearly five years ago, the ALJ erred by failing to
consult with a medical advisor to determine the onset date of her
disability, as required by Social Security Ruling ("SSR") 83-20,
1983 WL 31249 (S.S.A. Jan. 1, 1983).  According to claimant,

23

because the ALJ "clearly stated that there was not sufficient evidence to support [her] alleged physical impairments prior to 2013," Cl.'s Mot. to Reverse (doc. no. 6) 23, he was required "to infer an onset date and call on a medical advisor in doing so," id. Claimant's argument is without merit.

SSR 83-20 "describe[s] the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XIV of the Social Security Act . . . and implementing regulations." 1983 WL 31249, at *1. In a recent decision in a case from this district, the court of appeals explained that "[w]here precise evidence is not available, and thus there is a need for inferences [to establish the onset date for a claimant's disability], SSR 83-20 instructs the ALJ to call a medical advisor." Fischer v. Colvin, 831 F.3d 31, 35 (1st Cir. 2016) (citation, brackets, and internal quotation marks omitted).

In Fischer, the claimant applied for DIB in February of 2012. See 831 F.3d at 32. She claimed an onset date of October 31, 1995, and was last insured for DIB on March 31, 1998. See id. The district "court . . . found that the record did not unambiguously establish that Fischer was not disabled as of her DLI, thus requiring the ALJ to consult a medical advisor under SSR 83-20." Id. at 34. After discussing the medical records,

24

the court of appeals reversed, holding that:  (1) the "precise medical evidence [on which the ALJ relied] eliminated the need for the ALJ to infer that Fischer's onset date preceded her DLI," id. at 36; and (2) because "the contemporaneous medical evidence was specific and unequivocal," id. (citation omitted), SSR 83-20, if it applied in the first instance, "would not require the ALJ to call upon the services of a medical advisor to determine date of onset," id.

While there are cases in which SSR 83-20 might require an ALJ to call upon a medical advisor, this case is not one of them. In Fischer, the claimant's alleged onset date was approximately two and one half years before the date on which she was last insured for DIB.  See 831 F.3d at 32.  Here, the onset that claimant alleges for her physical impairment falls after her DLI. Given Gillen's own claim that her disc disease did not become disabling until after the date on which she was last insured for DIB, there was nothing in her claim that required the ALJ even to contemplate an onset date for her disc disease, much less rely upon inference to establish one.  With no need to infer an onset date, the ALJ was not obligated to call upon the services of a medical advisor.

### V. Conclusion

Because the ALJ has committed neither a legal nor a factual error in evaluating Gillen's claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision[7] is denied, and the Acting Commissioner's motion for an order affirming her decision[8] is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph Laplante
United States District Judge

Dated:  February 28, 2017

cc:  Christine Woodman Casa, Esq.
     Terry L. Ollila, AUSA

-------------------------------------

[7] Document no. 6.

[8] Document no. 8.